GLENN S. LEON
Chief
U.S. Department of Justice
Criminal Division, Fraud Section
EDWARD E. EMOKPAE
Trial Attorney
    1400 New York Ave., NW
    Washington, D.C. 20005
    Telephone: (202) 616-2551
    Facsimile: (202) 514-0152
    E-mail:   Edward.Emokpae@usdoj.gov
SIJI A. MOORE
Trial Attorney
    1400 New York Ave., NW
    Washington, D.C. 20005
    Telephone: (202) 834-2793
    Facsimile: (202) 514-0152
    E-mail:   Babasijibomi.Moore2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

2/1/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CDO _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>SAVANA CARTER,<br><br>       Defendant. | No. CR  2:24-cr-00069-JLS<br><br>PLEA AGREEMENT FOR DEFENDANT<br>SAVANA CARTER |

1.   This constitutes the plea agreement between SAVANA CARTER

("Defendant"), the United States Department of Justice, Criminal

Division, Fraud Section (the "DOJ") in the investigation of

fraudulent Paycheck Protection Program loans.  This agreement is

limited to the DOJ and cannot bind any other federal, state, local,

or foreign prosecuting, enforcement, administrative, or regulatory

authorities.

1                <u>DEFENDANT'S OBLIGATIONS</u>

2     2.   Defendant agrees to:

3        a.   Give up the right to indictment by a grand jury and,

4 at the earliest opportunity requested by the DOJ and provided by the

5 Court, appear and plead guilty to a one-count Information in the form

6 attached to this agreement as Exhibit A or a substantially similar

7 form, which charges Defendant with one count of Conspiracy to Commit

8 Wire Fraud, in violation of Title 18, United States Code, Section

9 371.

10        b.   Not contest facts agreed to in this agreement.

11        c.   Abide by all agreements regarding sentencing contained

12 in this agreement.

13        d.   Appear for all court appearances, surrender as ordered

14 for service of sentence, obey all conditions of any bond, and obey

15 any other ongoing court order in this matter.

16        e.   Not commit any crime or any act constituting

17 obstruction of justice; however, offenses that would be excluded for

18 sentencing purposes under United States Sentencing Guidelines

19 ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the

20 scope of this agreement.

21        f.   Be truthful at all times with the United States

22 Probation and Pretrial Services Office and the Court.

23        g.   Pay the applicable special assessment at or before the

24 time of sentencing unless Defendant has demonstrated a lack of

25 ability to pay such assessments.

26        h.   Defendant agrees that any and all criminal debt

27 ordered by the Court will be due in full and immediately.  The

28 government is not precluded from pursuing, in excess of any payment

1 schedule set by the Court, any and all available remedies by which to

2 satisfy Defendant's payment of the full financial obligation,

3 including referral to the Treasury Offset Program.

4        i.   Complete the Financial Disclosure Statement on a form

5 provided by the DOJ and, within 30 days of defendant's entry of a

6 guilty plea, deliver the signed and dated statement, along with all

7 of the documents requested therein, to the DOJ by either email at

8 usacac.FinLit@usdoj.gov (preferred) or mail to the DOJ Financial

9 Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

10 Angeles, CA 90012.  Defendant agrees that Defendant's ability to pay

11 criminal debt shall be assessed based on the completed Financial

12 Disclosure Statement and all required supporting documents, as well

13 as other relevant information relating to ability to pay.

14        j.   Authorize the DOJ to obtain a credit report upon

15 returning a signed copy of this plea agreement.

16        k.   Consent to the DOJ inspecting and copying all of

17 Defendant's financial documents and financial information held by the

18 United States Probation and Pretrial Services Office.

19        l.   To the entry as part of Defendant's guilty plea of a

20 personal money judgment of forfeiture against Defendant in the amount

21 of $1,043,897.00, which sum Defendant admits was derived from

22 proceeds traceable to the violations described in the factual basis.

23 Defendant understands that the money judgment of forfeiture is part

24 of Defendant's sentence.

25     3.   Defendant further agrees to cooperate fully with the DOJ,

26 the Federal Bureau of Investigation, the Treasury Inspector General

27 for Tax Administration – Office of the Inspector General, the

28 Internal Revenue Service – Criminal Investigation, the Small Business

Administration – Office of the Inspector General, the Department of Education – Office of the Inspector General, and, as directed by the DOJ, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires Defendant to:

a.   Respond truthfully and completely to all questions that may be put to Defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which Defendant's presence is requested by the DOJ or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the DOJ, or its designee, inquires.

4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by Defendant pursuant to Defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by parties dated January 17, 2024,(the "Letter Agreement'); and (2) "Plea Information" shall mean any statements made by Defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE DOJ'S OBLIGATIONS</u>

5.   The DOJ agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that Defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Not seek a sentence of imprisonment above the high end of and make no recommendation as to the point within the applicable Sentencing Guidelines range at which a term of imprisonment should be selected.   For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

6.   The DOJ further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against Defendant by the DOJ, or in connection with any sentencing proceeding in any criminal case that may be brought against Defendant by the DOJ, any Cooperation Information.   Defendant agrees, however, that the DOJ may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of Defendant; (2) to cross-examine Defendant should Defendant testify, or to rebut any evidence offered, or argument or representation made, by Defendant, Defendant's counsel, or a witness called by Defendant in any trial, sentencing hearing, or

other court proceeding; and (3) in any criminal prosecution of Defendant for false statement, obstruction of justice, or perjury.

b.    Not to use Cooperation Information against Defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with Defendant's sentencing, to bring to the Court's attention the nature and extent of Defendant's cooperation.

d.    If the DOJ determines, in its exclusive judgment, that Defendant has both complied with Defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.    Defendant understands the following:

a.    Any knowingly false or misleading statement by Defendant will subject Defendant to prosecution for false statement,

obstruction of justice, and perjury and will constitute a breach by Defendant of this agreement.

b.   Nothing in this agreement requires the DOJ or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that Defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw Defendant's guilty plea if the DOJ does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the DOJ makes such a motion and the Court does not grant it or if the Court grants such a motion but elects to sentence above the reduced range.

d.   At this time the DOJ makes no agreement or representation as to whether any cooperation that Defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether Defendant has provided substantial assistance will rest solely within the exclusive judgment of the DOJ.

e.   The DOJ's determination whether Defendant has provided substantial assistance will not depend in any way on whether the DOJ prevails at any trial or court hearing in which Defendant testifies or in which the DOJ otherwise presents information resulting from Defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

8.   Defendant understands that for Defendant to be guilty of the crime charged in the Count One of the Information, that is, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371, the following must be true: (1) there was an agreement between two or more persons to commit wire fraud in

violation of Title 18, United States Code, Section 1343 against financial institutions and the United States Small Business Administration ("SBA"); (2) Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  In order for a defendant to be found guilty of wire fraud in violation of Title 18, United States Code, Section 1343, the following must be true: (1) a person knowingly devised or participated in a scheme or plan to defraud, or a scheme to obtain money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts; (2) the statements made or facts omitted were material; (3) the person acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the person used or caused to be used an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that Defendant will be required to pay full restitution to the victims of the offense to which Defendant is pleading guilty.  Defendant agrees that, in return for the DOJ's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to

which Defendant is pleading guilty and in amounts greater than those alleged in the count to which Defendant is pleading guilty.  In particular, Defendant agrees that the Court may order restitution to any victim of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which Defendant is pleading guilty for any losses suffered by that victim as a result.  The parties currently believe that the applicable amount of restitution is at least approximately $1,043,897.00, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements.  Defendant understands that if Defendant violates one or more of the conditions of any supervised release imposed, Defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, Defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject Defendant to various other collateral consequences, including but not limited to revocation of probation,

parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw Defendant's guilty plea.

13.  Defendant and her counsel have discussed the fact that, and Defendant understands that, if Defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that Defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that Defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

14.  Defendant admits that Defendant is, in fact, guilty of the offense to which Defendant is agreeing to plead guilty.  Defendant and the DOJ agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below, but it

is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or around April 2020 and continuing through in or around April 2021, in Los Angeles, Orange, and Riverside Counties, within the Central District of California, and elsewhere, Defendant agreed and conspired with Amber Singleton ("Singleton"), Emanuel Tucker (whom Defendant knows by the name "Steve," herein referred to as "Tucker"), and others, to submit fraudulent applications to financial institutions and the SBA for loans through the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program, both of which were programs intended to provide relief to small businesses from during the COVID-19 pandemic.

Defendant and Singleton met in or around 2016 when Singleton informed Defendant about "aged shelf" companies (that is, companies that are created and exist without any operations but provide the false impression that they are established entities). In or around 2018, Singleton and the Defendant purchased Ireland Solutions Inc., an aged shelf company, that the Defendant used to sell hair and hair products on various social media platforms and "on the streets." In or around mid-2020, Singleton informed Defendant of the PPP and EIDL programs and suggested that the Defendant purchase additional aged shelf companies, specifically Market Data Inc. and Ireland Solutions Inc. (together "the Aged Shelf Companies"). In or around mid-2020, Singleton and the Defendant agreed to use the Aged Shelf Companies and Millstone Music Group, a non-aged shelf company, to fraudulently obtain the PPP/EIDL loans.

1       Thereafter, Defendant, Singleton, with the assistance of others,

2  submitted and caused to be submitted fraudulent loan applications

3  electronically, via interstate wire communications, on behalf of

4  Millstone Music Group and the Aged Shelf Companies to the SBA and

5  financial institutions that were SBA approved lenders of the PPP and

6  EIDL programs.  In total, Defendant, Singleton, and others submitted

7  at least seven PPP and EIDL loan applications between in or around

8  April 2020 and in or around April 2021.  Each of these applications

9  listed the Defendant as the owner of the applicant company, and

10  contained material misrepresentations about the company, including

11  false information regarding the number of employees at the company,

12  the operational status of the company, the average monthly payroll,

13  the cost of goods sold, and/or gross revenues in 2019.  Additionally,

14  the applications included false and material representations that the

15  PPP and EIDL funds would be used for permissible purposes, including,

16  payroll expenses, sick leave, production costs, and business

17  obligations, such as debts, rent, and mortgage payments.  Defendant

18  knew that each of the applications contained the false information

19  described above, and Defendant, along with Singleton, knew these

20  statements were material to, and indeed made in order to defraud, the

21  lenders and SBA.

22       The seven fraudulent loan applications were approved by the

23  lenders and resulted in payments totaling approximately $1,043,897

24  which were deposited into bank accounts opened and solely controlled

25  by the Defendant. As part of the conspiracy, Defendant paid a portion

26  of the loan proceeds, totaling more than $80,000, to Singleton and

27  Tucker as kickbacks for their assistance in getting Defendant the

28  loans.  Defendant, Singleton, and Tucker knowingly misappropriated

and misused the loan proceeds for their own personal benefit and for impermissible uses under the PPP and EIDL programs.

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant CARTER, Singleton, and others, committed the following overt acts, among others, in Los Angeles, Orange, and Riverside Counties, within the Central District of California, and elsewhere:

Overt Act No. 1:   On or about April 30, 2020, Defendant CARTER, Singleton and others filed and caused to be filed with a financial institution a PPP loan application seeking $166,660 on behalf of Ireland Solutions Inc., falsely representing that Ireland Solutions Inc. had ten employees and average monthly payroll of $87,583.34.

Overt Act No. 2:   On or about June 18, 2020, Defendant, Singleton, and others filed and caused to be filed with the SBA an EIDL application in the name of Ireland Solutions Inc., falsely indicating that Ireland Solutions Inc. had eleven employees as of January 1, 2020, and gross revenues in the amount of $1,100,000 from January 31, 2019 to January 31, 2020.

Overt Act No. 3:   On or about June 24, 2020, Defendant, Singleton, and others filed and caused to be filed with the SBA an EIDL application in the name of Market Data Inc., falsely indicating that Market Data Inc. had seven employees as of January 1, 2020, and gross revenues in the amount of $875,000 from January 31, 2019 to January 31, 2020.

Overt Act No. 4:   On or about July 29, 2020, Defendant, Singleton, and others filed and caused to be filed with the SBA an EIDL application in the name of Millstone Music Group, falsely

indicating that Millstone Music Group had eight employees as of January 1, 2020, and gross revenues in the amount of $765,123 from January 31, 2019 to January 31, 2020.

Overt Act No. 5:   On or about January 22, 2021, Defendant, Singleton, and others filed and caused to be filed with a financial institution a PPP loan application seeking $155,312 on behalf of Market Data Inc., falsely representing that Market Data Inc. had eleven employees and average monthly payroll of $62,125.

Overt Act No. 6:   On or about March 29, 2021, Defendant, Singleton, and others filed and caused to be filed with a financial institution a PPP loan application seeking $123,260 on behalf of Savana Carter, falsely representing that Savana Carter had eleven employees and average monthly payroll of $49,304.

Overt Act No. 7:   On or about April 19, 2021, Defendant, Singleton, and others filed and caused to be filed with a financial institution a PPP loan application seeking $149,165 on behalf of Ireland Solutions Inc., falsely representing that Ireland Solutions Inc. had eight employees and average monthly payroll of $59,666.

SENTENCING FACTORS

15.  Defendant understands that in determining Defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that Defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

16.   Defendant and the DOJ agree to the following applicable
Sentencing Guidelines:

| Base Offense Level | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
|---|---|---|
| Specific Offense Characteristics<br><br>Loss greater than $550,000 | <br><br>+14 | <br><br>[U.S.S.G. § 2B1.1(b)(1)(H)] |

The DOJ will agree to a two-level downward adjustment for acceptance
of responsibility (and, if applicable, move for an additional one-
level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the
conditions set forth in paragraph 5(c)) are met and if defendant has
not committed, and refrains from committing, acts constituting
obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as
discussed below.  Subject to paragraph 28 below, and with the
exception that the DOJ reserves the right to argue – and Defendant
the right to contest – that a two-level enhancement for the use of
sophisticated means applies pursuant to U.S.S.G. § 2B1.1(b)(10)(c),
Defendant and the DOJ agree not to seek, argue, or suggest in any
way, either orally or in writing, that any specific offense
characteristics, adjustments, or departures relating to the offense
level be imposed.

17.   Defendant understands that there is no agreement as to
Defendant's criminal history or criminal history category.

18.   Defendant and the DOJ reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing

1  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
2  (a)(2), (a)(3), (a)(6), and (a)(7).

3  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

4  19. Defendant understands that by pleading guilty, Defendant
5  gives up the following rights:

6  a.   The right to persist in a plea of not guilty.

7  b.   The right to a speedy and public trial by jury.

8  c.   The right to be represented by counsel -- and if
9  necessary have the Court appoint counsel -- at trial.  Defendant
10  understands, however, that, Defendant retains the right to be
11  represented by counsel -- and if necessary have the Court appoint
12  counsel -- at every other stage of the proceeding.

13  d.   The right to be presumed innocent and to have the
14  burden of proof placed on the government to prove Defendant guilty
15  beyond a reasonable doubt.

16  e.   The right to confront and cross-examine witnesses
17  against Defendant.

18  f.   The right to testify and to present evidence in
19  opposition to the charges, including the right to compel the
20  attendance of witnesses to testify.

21  g.   The right not to be compelled to testify, and, if
22  Defendant chose not to testify or present evidence, to have that
23  choice not be used against Defendant.

24  h.   Any and all rights to pursue any affirmative defenses,
25  Fourth Amendment or Fifth Amendment claims, and other pretrial
26  motions that have been filed or could be filed.

27
28

1

## WAIVER OF APPEAL OF CONVICTION

2      20.  Defendant understands that, with the exception of an appeal

3 based on a claim that Defendant's guilty plea was involuntary, by

4 pleading guilty Defendant is waiving and giving up any right to

5 appeal Defendant's conviction on the offense to which Defendant is

6 pleading guilty.  Defendant understands that this waiver includes,

7 but is not limited to, arguments that the statute to which Defendant

8 is pleading guilty is unconstitutional, and any and all claims that

9 the statement of facts provided herein is insufficient to support

10 Defendant's plea of guilty.

11

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12      21.  Defendant agrees that, provided the Court imposes a total

13 term of imprisonment within or below the range corresponding to an

14 offense level of 19 and the criminal history category calculated by

15 the Court, Defendant gives up the right to appeal all of the

16 following: (a) the procedures and calculations used to determine and

17 impose any portion of the sentence; (b) the term of imprisonment

18 imposed by the Court; (c) the fine imposed by the Court, provided it

19 is within the statutory maximum; (d) to the extent permitted by law,

20 the constitutionality or legality of Defendant's sentence, provided

21 it is within the statutory maximum; (e) the amount and terms of any

22 restitution order, provided it requires payment of no more than

23 $644,433.50; (f) the term of probation or supervised release imposed

24 by the Court, provided it is within the statutory maximum; and

25 (g) any of the following conditions of probation or supervised

26 release imposed by the Court: the conditions set forth in Second

27 Amended General Order 20-04 of this Court; the drug testing

28

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22. This agreement does not affect in any way the right of the DOJ to appeal the sentence imposed by the Court.

23. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which Defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support Defendant's plea of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

24. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, Defendant seeks to withdraw and succeeds in withdrawing Defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the DOJ will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; and (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, Defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against Defendant, and Defendant will not assert, and hereby waives and gives up, any claim under the United States

Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible.

EFFECTIVE DATE OF AGREEMENT

25.   This agreement is effective upon signature and execution of all required certifications by Defendant, Defendant's counsel, and a DOJ Trial Attorney or Assistant United States Attorney.

BREACH OF AGREEMENT

26.   Defendant agrees that if Defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of Defendant's obligations under this agreement ("a breach"), the DOJ may declare this agreement breached.  All of Defendant's obligations are material, a single breach of this agreement is sufficient for the DOJ to declare a breach, and Defendant shall not be deemed to have cured a breach without the express agreement of the DOJ in writing.  If the DOJ declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If Defendant has previously entered a guilty plea pursuant to this agreement, Defendant will not be able to withdraw the guilty plea.

b.   The DOJ will be relieved of all its obligations under this agreement; in particular, the DOJ (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use

any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The DOJ will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the DOJ's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.   Defendant understands that both Defendant and the DOJ are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, and (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence.  While this paragraph permits both the DOJ and Defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect Defendant's and the DOJ's obligations not to contest the facts agreed to in this agreement.

29.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw Defendant's guilty plea, and Defendant will remain bound to fulfill all Defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, Defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the DOJ and Defendant or Defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

21

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

31.   The parties agree that this agreement will be considered part of the record of Defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION


GLENN S. LEON
CHIEF, Fraud Section

_____      2/01/24
EDWARD E. EMOKPAE                    Date
SIJI A. MOORE
Attorneys for the United States of
America

_____      1/26/24
SAVANA CARTER                        Date
Defendant

_____      1/26/24
ROBERT BERNSTEIN, ESQ.               Date
Attorney for Defendant


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

22

1    of entering into this agreement.  No promises, inducements, or

2    representations of any kind have been made to me other than those

3    contained in this agreement.  No one has threatened or forced me in

4    any way to enter into this agreement.  I am satisfied with the

5    representation of my attorney in this matter, and I am pleading

6    guilty because I am guilty of the charge and wish to take advantage

7    of the promises set forth in this agreement, and not for any other

8    reason.

9    _____          __1/26/24_____

10   SAVANA CARTER                              Date
     Defendant

11

12

13

14

15                 CERTIFICATION OF DEFENDANT'S ATTORNEY

16       I am Savana Carter's attorney.  I have carefully and thoroughly

17   discussed every part of this agreement with my client.  Further, I

18   have fully advised my client of her rights, of possible pretrial

19   motions that might be filed, of possible defenses that might be

20   asserted either prior to or at trial, of the sentencing factors set

21   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

22   provisions, and of the consequences of entering into this agreement.

23   To my knowledge: no promises, inducements, or representations of any

24   kind have been made to my client other than those contained in this

25   agreement; no one has threatened or forced my client in any way to

26   enter into this agreement; my client's decision to enter into this

27   agreement is an informed and voluntary one; and the factual basis set

28

                                   23

1  forth in this agreement is sufficient to support my client's entry of

2  a guilty plea pursuant to this agreement.

3

_____          _1/26/24_____
4  ROBERT BERTNSTEIN, ESQ.                    Date
   Attorney for Defendant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28